case is case number 4170618. The people of the state of Illinois versus Brian Bowald. For the appellant, we have Mr. Bernstein. And for the athlete, Ms. Brooks. You may proceed, counsel. Thank you, Your Honor. May it suit the court, counsel. My name is Joshua Bernstein. I represent Brian Bowald in this case. And really what I believe this case boils down to is the utter failure of the post-conviction counsel to fulfill his very limited duties at the second stage. Specifically, when he was faced with essentially a request from Judge Feeney for more information about Mr. Bowald's fifth claim, that's the claim of juror misconduct. Counsel essentially chastised the judge and said, you're not allowed to fact find at this stage. That is the entire tenor of all of his responses. Well, pausing right there, isn't that correct? Well, to clarify your position on this, we're all familiar with the factual context of this, what the defendant's pro se petition said. Your appointed counsel for the defendant at the second stage, what are you going to do? What do you think you need to do? In other words, you talk about he didn't do anything or enough, but you don't say what he should have done. And I want to give you an opportunity right now. If it wasn't clear from our briefing, Your Honor, I think Judge Feeney laid it out beautifully here. What he needed to do, there was an inconsistency in the allegations between the petition and Mr. Bowald's affidavit. And you're talking about the fact that, for me, the issue was, okay, had this person been selected as a juror at the time that they received this supposed text message saying, well, response to her text saying she's on jury duty and a response saying hang them all? Correct, Your Honor. Or were they just out in the proposed juror's area? That's exactly the issue. In the petition, he says that this juror posted that she was a prospective juror. And then in the affidavit, he clearly says that she said she'd been selected as a juror. And you can look at Judge Feeney's discussion during the You're pausing right there. She was a juror, wasn't she? Ultimately, she was. So what difference, regarding the concerns expressed about potentially biasing a juror, does it make at what stage she sent this out, whether she was a prospective juror or whether she was ultimately selected, seemingly a short time thereafter? I think it has to do with how you analyze the prejudice. Had she been a prospective juror and she's messing around on her phone, it makes a difference whether or not she was looking or saw the responses from these people who were saying hang him. And it also makes a difference with respect to whether or not we can determine if she's been rehabilitated. If she's a prospective juror and she has not yet been placed in the jury box and questioned by the court, can you disregard certain things? Can you be fair and impartial? Versus if she's already been selected, that's over and she sends this text and gets these responses and there is no opportunity. I realize no one knew this was going on, but there's no opportunity to even look to the record and say, well, hey, even though that happened, after that happened, the judge questioned her about what you're to consider and what the evidence is and what you're not to consider. So we don't know that, right? I think that's absolutely correct, Your Honor. Although I think, from my perspective, the real issue with if she posted this after she'd been chosen is that she was acting in direct violation of the judge's admonishment. And that's the theme of the two cases I could find from out of state that dealt with this issue of juror. But just pausing right there, let's assume she is selected as a juror and on social media she says, oh, I've just been selected on the Bowell child abuse, sexual child abuse case. Just pausing right there. It's your position that that's automatic, reversible error? I believe it's structural error if she had been admonished by the judge not to communicate about the case and she is out on the internet soliciting. No, no. I didn't say soliciting. And I don't know that there's any basis to say she's soliciting. The hypothetical I gave you, I'm trying to form this question here. If she says, I've been selected on the Bowell child sexual abuse case, is that automatic, reversible error? If she had been admonished. Yes, she's been admonished, she's been admonished, but she says don't communicate. You're talking about a post on Facebook, right? Well, it's not really clear, but this was a social media post. There were responses to it. We don't know Facebook, Snapchat, Twitter, we don't know. Some social media. Right. So in that case, she has demonstrated her inability to follow the judge's instructions. Okay, so if that's your position, what if she told her husband at home, I've been selected on the Bowell child sexual abuse case, is that similarly automatic, reversible error? Assuming this comes up. I would say it would be a very unlikely scenario that her husband comes forward and says my wife told me I was on this child sexual abuse case. Well, she comes forward afterwards and she reveals it. Is that automatic, reversible error? I would think so. Counsel, it seems to me that's an utterly unworkable, unreasonable standard. In the cases you cite, don't hold that. Your Honor, the scenario we have here, first of all, respectfully, is not a hypothetical about talking to her husband. I'm trying to figure out what the rules are. Okay, so it is soliciting comment from the public, which is the purpose of soliciting. How do we know it's soliciting? You said it's soliciting comment. That is why you post on the internet, Your Honor. That's an assumption you're making. But that's just how it works, right? It's in the United States Supreme Court's opinion that I cited in my statement. She said, I'm hoping to get some response to this. You don't say you post in order to get responses. The Facebook, Twitter, Snapchat, these are the public forum of the 21st century. So that's an effect that we're just supposed to accept. Well, let's back up a little bit, Counsel, and let's talk about how it works. So let's say you post something on Facebook. You post it, and so everyone who's your friend in your timeline, they see your post. And then they have an opportunity to respond to that, right? That's correct, Your Honor. And if you don't limit the audience to your posts, your friends can also post that post. And I believe there are a billion people on Facebook. But that at least there are enough people on Facebook that other people on the jury could have seen it. Counsel, I apologize. I sidetracked you from my initial question. You're counsel. What are you going to do? In this circumstance? Yeah, yeah. You're now on second stage counsel for Mr. Bowark. What do you do? I would have first, at a bare minimum, had him amend his affidavit or amended the petition to clear up when this occurred. Because as these questions all tell me, Well, that assumes he would know. Well, and Okay, go ahead. What else? He knew he was sitting there, right? So if his wife came to him, as he says in his petition, and says, This juror, this lady emailed me this thing, and this juror posted, and this is what the responses are, he would remember the time frame. Okay, other than clearing up this ambiguity, was he already selected as opposed to a prospective juror? What else, if anything, would you do? Or think is a minimum requirement for competent counsel? A minimum requirement, that is the minimum requirement. Because I think that's the ambiguity that Judge Feeney was looking to resolve. The second thing I would have done is gotten an affidavit from Mrs. Bowark. Gotten an affidavit from the woman in the courtroom who showed them, or transmitted the post to them. Gotten a copy of the post. And, you know. What do you mean, gotten a copy of the post? You say that like it's something you can go to the library and check out. It is, Your Honor. There's no permanent deletion on the Internet. You can delete something from your phone. You can delete something from your computer. It's not like shredding a document in your file. So minimally competent counsel would know how to try to find this original posting, and that's what should have been attached to the motion in opposition to the motion to dismiss? No, Your Honor. Minimally competent counsel wouldn't know, and they could have tried. The point here is. But they're under 40, maybe. Yeah. I'm over 40, Your Honor. Okay. Go ahead. But the point here is that he tried nothing. He did nothing. You know, he files a 651C certificate saying I amended the petition, you know, to adequately present the petitioner's contentions. And what he did was nothing with respect to this facially possibly valid claim. Instead, he adds two claims, which are not. Besides the point, he did not amend. He supplemented. And had he amended? Had he? Well, I wasn't there enough in this petition to move it to the third stage based upon the claim that in his affidavit, he says that Ms. Ward posted that she had been selected to be a juror in the child sexual abuse case and had many responses attached there, too. Meaning the prospective juror or the juror at that point attached responses to her posting. Why isn't that enough to get to the third stage? I think, again, Judge Feeney points us in the right direction here. You know, in People v. Shrother and in People v. Turner, the issue there in those two cases was that there was something that was apparent that counsel didn't do. And Judge Feeney told him what he needed to do to get it to the third stage. I understand his argument, but you're not responding to my question. Why wasn't what was attached to the petition, the affidavit that I just quoted from, enough to get to the third stage? I see a contradiction between the affidavit and the petition itself. And as I see it, it matters when she posted this. And that's where the idea of prejudice comes in. As Justice Holder-White was saying before, when you have a requirement that the juror's behavior in the trial is affected, there has to be an allegation of prejudice, right? I don't want to be obliged about this. If I'm the trial judge in this case, it occurs to me that I'd want to move this to the third stage because notwithstanding all this other stuff that might be presented by affidavits of the wife or the other, I want to hear from the juror. Plus, the other thing is, I'm not sure we could expect – pause it right there – would you expect reasonably competent counsel to have obtained the affidavit from juror Ward? I would have expected him to try. Do we know whether he tried? There's no – If he tried, is that – if he tried and didn't succeed, then what? Any lawyer worth their salt, Your Honor, and I know you were all trial judges, that lawyer would stand up in your courtroom and say, I'm trying to get this juror into court, I'm trying to get an affidavit from her, and I can't. Your Honor, some more time, please, or please pass this – How about just moving it to the third stage and let's hear from the juror then? Actually, you would serve the people well to the trial court, Justice Steinman. I mean, really, had the judge done that, this wouldn't be an issue, and we would have answers to all these questions. Would we ever – at the best, you know, we get an affidavit from the juror and, you know, I'm not convinced we're going to get responses or the kinds of responses from the juror that I'd be interested in. I frankly think, you know, just speculating, this is all probably much ado about nothing, that if we got her on the witness stand, she'd say, oh, yeah, I, you know, I didn't think there was anything to do and I got these messages and I ignored them, they had nothing to do with my verdict in this case, or words to that effect, and if she said that, the trial judge believed that that would be the end of it, wouldn't it? At the third stage. He said, as we may, if counsel brought the host in and it showed that she had been admonished, that would be structural error, and that just brings us right back to the beginning, Your Honor. This is what – the omission here is the answer – what's in the answer to what was omitted here answers all of your questions, and that's the problem. We don't know the answers. What I know is that counsel did not amend a claim that stated the gist of a constitutional claim, and at a minimum, as I said, at a minimum, he could have amended Mr. Folwell's petition. A little extra effort would have been – this is Folwell's petition – slightly more effort would have been getting the juror's petition. I'm sorry, affidavits. I'm sorry, affidavits, yes. And the most effort would have involved finding this social media post, which I assure you is out there, and if you require sources for this assertion, it's not an assumption, it's the truth, and it's – I can cite – Well, but that's one of the troubling things about what we're talking about here. The trial court is supposed to assume it's true, given here's this affidavit saying this is what was said and done, and I'm not sure why you need the social media post. That would be something to resolve maybe at the third stage, but we're talking about is there enough to get to the third stage. Why should he have to get the social media post if you have the uncontradicted affidavits? I'm not saying he has to get the affidavit. Well, that's what your suggestion was in response to my question. I'm not saying he has to get the social media post. I was giving you the spectrum of actions that he could have taken. The bare minimum to get this to the third stage would have been clearing up Judge Feeney's questions about the timeline, and that was it. But the question is, assuming what was in your client's affidavit is true, as the trial court is required to do at that stage, why isn't that enough to get it to a third stage? Did post-conviction counsel really fail to act, or should the trial court have moved it to the third stage? Was there enough? I think this court, if you find that the affidavit alone is enough, I say we won't come to it. But you didn't argue it. No, I don't believe that. You didn't argue that the trial court erred by not moving it to the third stage. I don't believe the trial court erred, and I believe that it's the contradiction between the affidavit and the petition itself that is the key here. But if the affidavit is true, as you have to assume that it is, that's not enough to move it? If the affidavit and the petition had matched, I think that would have been enough to move it. But I think there's a facial problem with the petition that doesn't reflect what's in the affidavit. And I think that's really what it boils down to here. It could have been done in five minutes, and a reasonable counsel would not have argued to the judge that this is fact-finding. He would have done what the judge had. So, in structural error, in your view, if the juror warrant had already been admonished by the court, don't communicate. But if the juror's social media posting, whatever it was, occurred before she was actually selected, then it's not structural error at all. That's why it's so important in your argument that this affidavit has to be cleared up? Yes, I believe the effect of the responses to the social media posts become important if the juror posted this before she was admonished by the judge and seated as a juror. So if she's a perfected juror and she posts it before she's been admonished and she gets back the response of hang them all or hang them, no problem with that. It's the act of posting. Well, she posted it as a perspective juror and she got that response. She hasn't yet been admonished by the court. And this is where the fact-finding comes in as to when she posted it. The question is, if she's still just a perspective juror, posts this and gets those responses that she attaches to her message, no problem. Potentially a problem, right? Potential problem. We don't know what she was admonished about from the judge after she got in the jury box. Correct. That goes to the rehabilitation that I was talking about. Correct, Your Honor. If I may just take one, I know my time is up, but just to wrap up. You will have additional time on rebuttal counsel. Thank you, Your Honor. Thank you. Ms. Brooks? Thank you, Your Honors. May it please the Court and counsel, my name is Allison Paige Brooks, and I appear on behalf of the people. The standard here under Rule 651C, the defendant has to overcome rebuttal presumptions that counsel provided reasonable assistance by failing to amend the petition. In other words, the counsel's obligation at the second stage is to shape the defendant's allegations, the pro se allegations, into appropriate legal form. And in this case, the pro se allegations were already in appropriate legal form, and therefore the defendant has not overcome the presumption created by counsel's Rule 651C affidavit. What about the question you've been hearing us raise that there was an inconsistency between the petition and what appears in the affidavit, the factual affirmance, and the whole business of whether the juror had been admonished by the court not to communicate. And we're assuming, and we don't know that either, a lot of prospective jurors, using Champaign County as an example, I know I was a prospective juror, when you walk in is the big jury pool. Part of the admonitions there is if you're selected for a jury, don't talk about anything. So there's always been some preliminary, you haven't yet heard it from the judge. Nonetheless, you heard the discussion about how the claim is it makes a big difference whether the juror was merely a prospective juror, namely under the jury panel from which jurors will be chosen for the mobile sex abuse case, or had she already, in fact, been selected to be one of the 12 jurors when she sent the social messages. Isn't that something? You heard the argument which counsel could have, and the argument should have, cleared up with regard to getting an amended affidavit or something further from his client, his client's wife, the other person who might have been in the courtroom, to establish the timing when this message came. Well, the state believes that the inconsistency the dissent cites is inconsequential because the standard under the Turner case is whether the defendant has presented a complete claim, and here the claim was ineffective assistance of counsel. So the elements of ineffective assistance of counsel were stated in the pro se petition, that is, the defendant claimed that his counsel provided unreasonable assistance by failing to inform the trial court about this development that you heard and also the allegation that he was prejudiced by that failure. So, in effect, what you're saying is trial counsel was right, post-conviction counsel was right in his response to the trial court  This is enough. I shouldn't have to do more. The counsel was correct that the pleading of the claim was sufficient. However, that doesn't mean that the claim is meritorious. No, I understand, but we're just talking procedurally now. Right. At the hearing of the motion to dismiss, when the state said, we have nothing here, post-conviction counsel said, Judge, the defendant's affidavit is enough, and you're wrong, and the state's wrong to suggest otherwise. By the argument you just made, you're saying post-conviction counsel was correct, aren't you? I believe that if the state below had said that the petition was not enough, that would not be correct. And the judge said it too. Right. Well, the state's view is that it's sort of odd that the defense claims that their petition was insufficient or insufficiently pled, and the state's position it was sufficiently pled. Well, then the argument would be that the trial court erred by not advancing this to this third stage, if it were sufficient. Is that correct? That's not the case, because the point the state is trying to make is that there's a difference between a sufficiently completely alleged claim, that is, they have alleged all the elements. However, that allegation of prejudice that was sufficiently alleged, however, is not itself a substantial showing of a constitutional violation, which would require the court to advance it to the third stage. In other words, it is not sufficiently meritorious to advance it to the third stage, but that does not mean that the petition was not sufficiently pleaded to constitute a claim for purposes of second stage review. So, in other words, just because a claim... Just pausing right there. Wouldn't that require a lot of speculation on the court's part? In fact, it's the speculation I have, but it's what it's speculation. Namely, if the juror were to testify at the third stage, she'd say, you know, I knew who these people were. They're friends of mine. They're just blown off smoke. It didn't affect me at all. But, for all we know, maybe at the third stage, if she testified, she said, oh, yes, this guy had been my father confessor and had a big role in my life. And he said, when he wrote back, hang him high and hang him hard, you know, that gave me pause. I tried to disregard it, or words to this effect. That would be rather different, wouldn't it? And aren't we just speculating until we hear from Ward herself? And isn't that what the third stage would be about? Well, it's true what you're saying. However, the point is that the second stage review, to withstand the motion to dismiss, the allegations of the petition, taking it true, would have to make a substantial showing of constitutional violation. In other words, that if true, they would entitle the defendant to the relief he's seeking, which is a new trial. However, the trial judge said no, because the allegations did not say that Ward had actually read the comics. That's not alleged to be true. What else could, how do we get to the third stage to find out if it's true? I mean, is he supposed to get an affidavit from the juror herself, who might not be, that might not be forthcoming, and she might not be willing to cooperate. And if I'm the trial judge, I think I'd want to hear from her, as opposed to just getting affidavits anyway. Well, the question here is not whether a different claim could have been pleaded and supported by an affidavit from a juror, and therefore could have advanced to the third stage. The question here is whether this defendant's claim, this particular claim, which was completely alleged in a complete form, sufficient to survive the motion dismissed on the ground, like stated in the Turner case, well, you didn't plead prejudice, therefore it's subject to dismissal because you didn't make a complete claim with Strickland. That would be subject to dismissal because you didn't allege a complete claim of ineffective assistance.  I suppose, here's my problem, counsel. And this is something that I've been wrestling with. You're right that the second stage seems to be, have you stated a claim of substantial violation of the constitutional right to advance to the third stage, whereas here what we have is maybe. That is, we won't really know until we've heard from a juror. This is what makes this case so unusual. And ought the rule not be that we ought to, when it's something like this where we really need to hear from the juror herself, or go to the third stage, and there is the, not the promise, but there is a colorable claim that juror misconduct occurred in this case that might have affected the defendant's ability to refer a trial. And his lawyer should have pursued this, perhaps. But maybe it's just due process claim about the, don't we see that about a juror misconduct? Isn't that enough to get to the third stage? I don't know if I've said that correctly. Is it that there's a colorable, a sufficiently colorable claim to be advanced so that we can get, hear from the juror herself and get these matters resolved? I'm trying to understand if you're asking what, how else the defendant could have alleged this in a way to get it to the third stage hearing versus... Yes, that's part of it, I guess. Okay, part of it. Well, the post-conviction petition must allege a denial of constitutional rights, not statutory rights, it has to be constitutional rights. One constitutional right is the denial of a right to trial by an impartial jury. But here it was alleged in support of ineffective assistance. This is claim five. Their claiming was inadequately amended by counsel. So this is the defendant's claim. And it adequately alleged a complete claim of ineffective assistance of counsel. But that's a different question from whether it is sufficiently meritorious that if true, he'd be entitled to a new trial, and therefore we need to hold an evidentiary hearing to see whether that allegation is true. In other words, the defendant has a burden to show by, to prove, they have hundreds of evidence that his claim, which for the second stage is assumed to be true for purposes of the motion dismissed, but at the third stage he has a burden of actually proving it to be true by hundreds of evidence. So the only question at the second stage is whether that claim, if it could be proved to be true, because it's assumed to be true, would he be entitled to a new trial? The ineffective assistance claim is based upon the fact that the allegation is, during this conflict that occurred here, I told my lawyer about it, and he failed to do anything. So part of it, I guess, would be it's kind of like an illegal malpractice case. In order to prove legal malpractice, you have to prove you would have won the case to begin with, and your lawyer was incompetent. But similarly here, I guess the argument would have been, before he can have ineffective assistance because of the alleged juror misconduct, at the third stage you have to find out, was there any juror misconduct? As a for instance, if juror Ward were to testify at the third stage and say, oh, no, this, she gave some explanation, which the trial judge found to be credible, that this was bad form, but it didn't affect her ability to defer an impartial, then it would follow from that. There's no problem, certainly no Sixth Amendment ineffective assistance and counsel problem with the lawyer at trial having been told about this and not following up. But it seems to me we have these multiple steps there, and the lawyer was told about this potential juror misconduct, seems to be a colorable claim, didn't do anything about it. And the colorable claim, I guess, is the whole point of drawing a break here. When it concerns juror misconduct and the lawyer failing to follow up, do you need anything more than a colorable claim at the second stage in a petition? Yes. The state's reliance on the Metcalf case shows that, although Metcalf is factually distinguishable, her bias in that case was arguably against the legal system and not against the particular defendant's crime, for example, here. The allegation of prejudice could be shown if they had proved, for example, or alleged that she had actually read the prejudicial third-party communications to hang him, for example. That could constitute enough to get to the third stage. But Metcalf, the key here is that the legal requirement, when juror misconduct is an issue and the allegation is that the trial court didn't do enough to investigate it or do enough to bring it to the court's attention, the requirement is showing actual prejudice. That is the standard, and that's what Metcalf teaches. And so there has to be a reasonable probability of a different result. Like, would the defendant have been acquitted? Well, let me ask this then. It seems to me your position is, given the nature of the claim the defendant made in this case about the alleged juror misconduct, that there's nothing he could present, the post-conviction counsel could have presented that would have advanced this case to the third stage ever. Is that your position? No. If he could have made a different claim and supported it, for example. No, we're talking about ineffective assistance. Oh, okay. His claim is, there was juror misconduct, colorable juror misconduct, based upon this message. I told my lawyer about it. My lawyer did nothing. It seems to be your position that at the second stage, there's nothing further the defendant could have ever alleged to get to the third stage. Well, he's got to get also past the objectively unreasonable part, the first problem with Strickland. And if I were the attorney who just knew that a juror had disregarded saying that he had a mission not to post on social media, and then, I mean, it's like stirring up the hornet's nest, okay? So just assume that maybe this juror didn't know about the responses. Just made a post, put her phone away, and didn't know anything about the hang-them-all. And now I'm bringing into this trial an allegation this juror has posted on social media, solicited comments from the public to hang him or something like that. And now that's really complicating this trial. And what if the trial court does not dismiss this juror? And then she says, oh, yeah, you know, okay, my friends on Facebook told me to hang him, but I won't listen to that. And then now she's staying in the case. And now just because the efforts of the defense, you have brought to her attention that she didn't know about before. Well, but here's the thing. The affidavit, and I think this is an important part of the affidavit, says that the message from Ms. Ward, the juror to this key swatter, read that she had been selected to be a juror in the Beaumont child sex abuse case and had many responses attached there, too. So her message contains the responses, hang him or hire him, hang them all, which makes it rather difficult to even suppose that juror Ward didn't see them. She's attached them, according to the affidavit. Okay. So I think you're probably taking it that people responded in that way, not that the juror attached them. Right, that's what I'm trying to do. I didn't understand it to be that the juror had attached the responses, that this is something. I'm not sure that that was the importance of the affidavit. Maybe I misunderstood it. This is the affidavit. I'm reading it now. It could be more clear. Okay. But his affidavit says that the message from Ms. Ward to Ms. Keyswatter read that she had been selected to be a juror in the Beaumont child sex abuse case and had many responses attached there, too. Such responses were hang them all and hang them. Now, as I read that, it seems to me that it's her. When she sent this message out, she sent these responses attached to the message. See, that was my question. I didn't know whether it was clear. Well, when you think about how Facebook works. See, I don't know. I'll be the first one to admit that. I didn't know whether those responses are to the original juror's message or they're responses to the woman's message who passed it on. Oh, okay. I'm not sure that it matters, because if the juror posts a message and puts her phone away right away and doesn't bother to wait around for people hours later, potentially, to respond to it, then, you know, I'm saying it's totally reasonable for the trial counsel. But Justice Steigman is saying that he reads the affidavit to mean that the juror who is accused of misconduct attached to her post the responses to hang them high. But the way it works on Facebook, you post something, people can comment, and then other people who see your post, they can see the comments of other people. Okay. Right? Yeah, I assume so. You mean you're not familiar with Facebook? I'm not on Facebook. I'm not on there, but I know a little bit about it. But I assume that somebody who makes a social media post can do so without necessarily seeing the answers. And that's why I guess it can't be presumed that she would have necessarily seen every comment that was made. And I'm not sure exactly. The way that this comes to the attention of the defendant and that he brings it to his counsel's attention, I'm not sure that somehow the juror herself had posted the comments. That's why I don't really understand the reading. Let me ask you this way. Is there anything in your judgment, given your understanding about the circumstances of this case, that could have advanced this petition to the third stage? Any? Disclaim. Disclaim. By way of the same question I asked the counsel, is there something counsel could have or should have done? Or is this claim just going to die at the second stage no matter what? Because it can never, it seems to me you're saying, can never state a substantial constitutional violation on its face. I believe they have to allege that the juror was actually exposed to prejudicial third-party information. That is the allegation that they needed to make. How could they do that? They probably needed to investigate better before they brought the claim. But that's not counsel's fault for failing to amend what was the actually implied claim. Should counsel have contacted the juror and asked these questions and seen if counsel got a response? And, of course, how about this? Mr. Bernstein suggested maybe counsel would ask, and the juror is not willing to cooperate, but they have to. Right. So some counsel adds his own affidavit saying, I tried to talk to her and I couldn't, and would the rejection by the juror of this effort be enough to advance this, or are we just never going to know? At that point, I don't think if the juror wasn't cooperative and there's no way of supporting the allegation the juror was exposed to prejudicial third-party information, then, right, it's probably not going to advance. But my point is just simply is that, yes, the counsel could have, after being appointed, asked the juror, but the question here is, is it required by Rule 60.9? I'm sorry, I'm going to cut counsel off. His time is up, so I'm going to do the same for you. Thank you. Any rebuttal, counsel? Yes, Your Honor, thank you. I think what respectfully the state's argument here explains exactly where counsel went wrong. They're saying that there's this complete claim, and yet it can go no further because it's not complete. And that is essentially my argument, and my argument is essentially that counsel did not complete that claim. So if counsel contacted the juror, the juror blows him off. No. Does that constitute evidence, or just jurors are willing to speak? I actually like your idea of counsel attaching an affidavit. My affidavit, in a circumstance like that, would say, I tried to contact the juror, she blew me off. This shows that I tried to make a claim that's complete in the state's eyes, and I'm asking that this, too, be advanced to the third stage, where we can further explore this issue. You know, I have to say, with respect to the affidavit, though, I believe that, in my experience with social media, such that the responses automatically follow the initial post, and I don't know that there was anything the juror would have had to attach, or even would have attached, that's just kind of not the way these things work. But I, you know, had she forwarded with, I'm sorry, had she responded to any of those, her responses would also be there, and that would be evidence that she had read the post, and possibly that she was influenced by the post, which, again, gets back to whatever you need to do to get these posts from the social media company. So ultimately, I think what this boils down to is, maybe the state and I agree that there's something missing here, we just disagree with what happened. So a reasonably competent counsel would know how to obtain these social media posts from juror Ward's account and be able to provide those to the court. I'd have to have help, Your Honor. Well, I was going to say, it's a good thing I'm no longer practicing counsel, because it's something that I would have no idea about. As I'm sure you know, the federal court has gone to electronic, has enacted rules on electronic discovery. This stuff can be a pain. And I don't know how it happens in a trial court. I'm an appellate lawyer. But you can subpoena this information. It's always on the servers. It never ceases to exist as a message. What you put on the Internet stays forever. And had she responded, that would have been it right there. Do not pass go, do not collect $200 if juror Ward's like, I'm hanging this guy, that would have been the end of it. In any case, we're asking that Your Honor is cool. What about Ms. Brooks' argument that you have merely a colorable claim that something bad may have happened, because we don't know, as I speculated, juror Ward might have just laughed this off and said, well, of course not. I know who posted it as some crazy guy. But my question to her is, is it a colorable claim? And she says it's got to be a claim of substantial constitutional violation. Your affidavit, if you were a lawyer, saying the juror wouldn't talk to me, doesn't add to it, does it? I mean, that's not evidence other than she won't talk to you. You could ask for the juror to be subpoenaed. Well, no, that's at the third stage. I'm talking about the second stage. You heard her argument. To what extent is she correct that the second stage issue is, as the petition set forth, a claim already of a substantial constitutional violation? I think that amending this complaint, amending the petition, or amending the affidavit to resolve the inconsistency, would have been enough to pass it to the third stage court hearing. Whatever the juror says also would be affected by whether she posted this after she'd been admonished or not. In my position, I understand you may disagree with me, Your Honor, but that was the bare minimum, and it could have been done. And I think this purple argument here in this court today shows you that the bare minimum was not done. This is why counsel is appointed at the second stage. This is why Rule 651 exists, to get the bare minimum to advance a meritorious claim. Thank you, Your Honor. Thank you, counsel. We'll take this matter under advisement and be in recess.